Braulio Sebastian Sanchez, Esquire
Arizona Bar No.: 028046
Sanchez Law Group P.L.L.C.
340 W. 5th Street
Yuma, Arizona 85364
Tel: (928) 782-3110
Fax: (928) 569-0146
Email: staff@sanchezlawteam.com
For Defendant

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| United States of America, | No. CR-22-00318-01-PHX-DGC |
|---|---|
| Plaintiff, | **DEFENDANT MOLINA-GALEANA'S OBJECTIONS TO DRAFT PRESENTENCE INVESTIGATION REPORT** |
| vs. | |
| Omar Molina-Galeana, | |
| Defendant. | |

## I.    INTRODUCTION

Pursuant to Rule 32 of the Federal Rules of Criminal Procedure and Local Criminal Rule 32.1, the defendant, Omar Molina-Galeana, by and through undersigned counsel, respectfully submits his objection to the draft presentence investigation report (Doc. 319 [PSR]).  These objections are based on guideline calculations.  These objections will impact guideline calculations, as explained below, as well as the sentencing factors in 18 U.S.C. section 3553 (a), which Mr. Molina will address in his sentencing memorandum to be submitted at a later date.

## II.    OBJECTION (S)

### U.S.S.G. section 3B1.1 (a)

The presentence report recommends a four-level enhancement against Mr. Molina for his role as an organizer or leader of a criminal activity that involved five or more participants under U.S.S.G. section 3B1.1 (a).  See Paragraph 57.

1

According to the PSR, Mr. Molina "is the leader of this conspiracy, and is responsible for 48 firearms purchased during the conspiracy . . . Mr. Molina, with the assistance of Jesus Guerrero, recruited nine individuals to purchase the firearms."    Paragraph 39.    In addition, "Jesus Guerrero acted as a manager/supervisor, and he worked directly for Molina-Galeana."  PSR Paragraph 40.

> According to Notes 1,2, and 4 respectively, for U.S.S.G. section 3B1.1 (a):
> **1.** A "participant" is a person who is criminally responsible for the commission of the offense, but need not have been convicted. A person who is not criminally responsible for the commission of the offense (e.g., an undercover law enforcement officer) is not a participant.
>  **2.** To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants. An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization.
> **4.** In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy. This adjustment does not apply to a defendant who merely suggests committing the offense.

To determine whether Mr. Molina was an "organizer" or a "leader," he must have exercised "control over others."  *United States v. Avila*, 95 F. 3d 887,

892 (9th Cir. 1996). The practical dimensions of what it means to exercise "control over others" are well illustrated by *United States v. Avila*. Avila was the sole go-between for a buyer and a seller in a drug sale. *Id.* at 891. Even though he obtained and mailed the cocaine, was the only person who met with the undercover officer, and received armed assistance from co-conspirators, the court held that the enhancement did not apply because he did not exercise "control over others." *Id.* at 890–92. Similarly, in *United States v. Whitney*, the court held that the enhancement was not warranted because there was no demonstration of control over others, even though the defendant "supplied [a co-conspirator] with tax forms and information on filing false returns." 673 F.3d 965, 969, 975–76 (9th Cir. 2012).

Furthermore, a defendant "organizes" other participants if he has "the necessary influence and ability to coordinate the[ir] behavior ... so as to achieve the desired criminal result[s]." *United States v. Doe*, 778 F.3d 814, 826 (9th Cir. 2015). **Mere facilitation of criminal activity is not sufficient to support the enhancement**. *Doe*, 778 F.3d at 825. Nor is it sufficient for a defendant to have organized property or activities—the defendant must have organized participants. *Id.* at 824 n.4

Here, Mr. Molina is a twenty-year-old individual who at the time of this conspiracy was only twenty years old.  He was recruited in this scheme by a high school friend who told him there was an easy way to make money, namely, contacting any of his friends to see if they were willing to buy weapons.  PSR paragraph 52.  Mr. Molina, acting under the advice of this high school friend, contacted Jesus Guerrero, and 3 of the straw buyers to see if they wanted to buy firearms.  Mr. Molina had met all of them while attending high school.  It was Jesus Guerrero the one who recruited the other co-defendants or straw buyers.  As a matter of fact, Jesus Guerrero recruited six (6) of the nine (9) straw buyers.  See PSR paragraph 40.  Jesus was accountable for 35 of the firearms.  *Id.*  Also, Mr. Molina denies the accusations stated by Mr. Guerrero.  PSR Paragraphs 31 and 32.

Mr. Molina's acts instructing the co-conspirators to buy firearms did not demonstrate control over others, it showed at the most he was a recruiter.  *See Doe, supra*.  Mr. Molina did not have the influence and ability to coordinate co-defendants.  The most he did was to facilitate the funds if the co-defendants were able to obtain the firearms.  On the contrary, the one who showed control over others was Jesus Guerrero.  He was the one who went with the straw buyers to make sure the firearms were obtained, collected such firearms, and he was paying

the straw buyers as well.  Characterizing Mr. Guerrero as the manager/supervisor and Mr. Molina as the organizer/leader was an incorrect assessment.  PSR Paragraphs 39- 40.

Worst case scenario, Mr. Molina and Mr. Guerrero are pretty much comparable in their responsibilities, or co-equal in this scheme. In other words, Mr. Molina did not exercise control or "organizational authority" over Mr. Guerrero nor the other co-defendants by telling them to get firearms in exchange for money.  *See United States v. Holden*, 908 F. 3d 395, 402-03 (9th Cir. 2018).

### U.S.S.G. section 2K2.1(b)(6)(A)

The PSR also recommends a four-level enhancement against Mr. Molina for possessing or transferring any firearms with knowledge, intent, or reason to believe that it would be transported out of the United States under U.S.S.G. section 2K2.1(b)(6)(A).  See Paragraph 54.  This determination was made based on co-defendants' statements, and because several of the firearms were recovered in Mexico.

Mr. Molina contests the accuracy of the co-defendants' statements.  PSR Paragraphs 13, 21, 25, 27, and 32.  Mr. Molina avows he was recruited around April or May of 2021 by a high-school friend, Andres Beltran.  Andres told Mr. Molina there was an easy way to make money, namely recruiting people to buy

firearms and deliver them to him.  Mr. Molina claims he delivered the guns he obtained from co-defendants to Andres and that was the extent of his involvement.[1]  He agreed to participate with Andres to support his exacerbated drug addiction.  PSR paragraphs 82-83.  As a matter of fact, there were instances where Andres paid Mr. Molina with drugs instead of money.   PSR Paragraph 52.  Mr. Molina's arrangement with Andres occurred in the United States not in Mexico.

Finally, some of the statements made by the co-defendants were mere speculation and/or conjectures not based on facts.  For instance, Kai San Diego told ATF agents "he believed Jesus Guerrero and Omar Molina were "smuggling" the firearms to Mexico, but he never asked questions."[2]  There is no evidence provided by Mr. San Diego where an inference could be made Mr. Molina would be transporting the firearms outside of the United States.  His own statements were that he did not ask questions.  Finally, Jesus Guerrero, when interviewed by ATF agents, gave several contradictory statements to minimize his involvement that do not contribute to an objective assessment on whether Mr. Molina had reasons to believe the firearms would be transported out of the United States.  See

---

[1] See also PSR Paragraph 52.
[2] PSR Paragraph 27.

PSR paragraphs 31-34.  Just because several firearms were recovered in Mexico does not mean he had reason to believe such firearms were going there.

### III.   CONCLUSION

For the above stated reasons, Mr. Molina requests these objections be sustained, and the report amended.

Respectfully submitted:  August 15, 2023.

s/*Braulio S. Sanchez*
Braulio Sebastian Sanchez, Esq.
Attorney for Defendant

### CERTIFICATE OF SERVICE

I hereby certify that on *August 15, 2023*, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

**Addison B Santome**
US Attorneys Office - Phoenix, AZ
2 Renaissance Square
40 N Central Ave., Ste. 1800
Phoenix, AZ 85004-4408

480-371-7819
addison.santome@usdoj.gov

Copy Mailed to:

Omar Molina- Galeana Defendant
Florence Correctional Center
1100 Bowling Rd
Florence, AZ 85132

*/s/ Braulio Sebastian Sanchez*

8