**JUAN L. ROCHA**
Rocha Law Office
Arizona Bar No. 025039
P.O. Box 5965
Mesa, Arizona 85211-5965
Tel: (480) 855-1759
Fax: (855) 327-4858
jrocha.law@gmail.com
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | Case No. 2:22-cr-00318-DGC-003 |
| Plaintiff, | DEFENDANT'S OBJECTION TO PRE-SENTENCE REPORT ¶¶ 60-62 |
| -vs- | |
| Jesus Guerrero, | |
| Defendant. | |

Defendant, Mr. Jesus Guerrero by and through undersigned counsel, objects to ¶¶ 60-62 of the draft Pre-Sentence Report (PSR). For the reasons contained in this Memorandum of Points and Authorities, Mr. Guerrero asks the Court to sustain his objections to the PSR because his juvenile adjudications do not satisfy due process requirements for the purpose of assessing Criminal History Score, and because the imposition of unsupervised probation is considered a suspended sentence under Arizona law and, thus, not counted under the Sentencing Guidelines.

He, therefore, asks the Court to sustain his objection and re-calculate his criminal history score to reflect Criminal History Category I, zero points, and reduce his offense level by two levels for having zero criminal history points under USSG § 4C1.1.

RESPECTFULLY SUBMITTED: December 18, 2023.

*s/Juan L. Rocha*
JUAN L. ROCHA
Attorney for Defendant

Case 2:22-cr-00318-DGC    Document 490    Filed 12/18/23    Page 2 of 7

### A.    PARAGRAPHS 60 & 61

#### a.    PSR Calculations

The PSR writers calculated four criminal-history points to Guerrero's Criminal History Score, resulting in Criminal History Category III.  PSR ¶¶ 63-34.  The PSR writer assessed him two points for a juvenile adjudication under U.S. Sentencing Guideline (USSG) §§ 4A1.1(b) and 4A1.2(d)(2)(A), sustained on August 2, 2016, for which he was sentenced to nine (9) months in juvenile prison.  PSR ¶ 60.  The PSR writer also assessed him one point for a juvenile adjudication under §§ 4A1.1(c) and 4A1.2 comment. (n.11), sustained on March 1, 2017.  PSR ¶ 61.

Guerrero objects to the assessment of the three points to his Criminal History Score because his juvenile adjudications did not comport with due process requirements, like the right to a jury trial, confrontation of witnesses, or criminal procedure rules under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *U.S. v. Tighe*, 266 F.3d 1187 (9th Cir. 2001).

#### b.    Argument

In *Apprendi v. United States*, the Supreme Court held that other than a prior conviction, a fact that increases the statutory maximum of a defendant's sentence is required to be submitted and prove to a jury beyond a reasonable doubt.  *Apprendi*, 530 U.S. at 497. The Supreme Court has explained that prior convictions were constitutionally distinct from other sentence-enhancing facts, such that it was permissible, under *Almendarez–Torres v. U.S.*, 523 U.S. 224 (1998), to use prior convictions to increase the possible penalty for an offense without treating them as an element of the current offense.  "One basis for that constitutional distinctiveness [of prior convictions]: unlike virtually any other consideration used to enlarge the possible penalty for an offense. . . a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt and jury trial guarantees."  *Jones v. U.S.*, 526 U.S. 227, 249 (1999).  *Jones'* recognition of prior

2

convictions as a constitutionally permissible sentencing factor was rooted in the concept that prior convictions have been, by their very nature, subject to the fundamental triumvirate of procedural protections intended to guarantee the reliability of criminal convictions: fair notice, reasonable doubt and the right to a jury trial.

One year later, in *U.S. v. Tighe*, the Ninth Circuit held that *Apprendi's* narrow "prior conviction" exception is limited to prior convictions resulting from proceedings that afforded the procedural necessities of a jury trial and proof beyond a reasonable doubt. *Tighe*, 266 F.3d at 1195. While the *Tighe* Court was evaluating whether prior juvenile adjudications could be used to increase a defendant's statutory maximum sentence under the Armed Career Criminal Act (ACC), the Court's reasoning applies to juvenile adjudications under the Sentencing Guidelines.

Guerrero was not afforded due process in either of his two juvenile adjudications. It is beyond dispute that he was never afforded an opportunity to have his case tried before a jury by a beyond-a-reasonable-doubt standard of proof and other due process safeguards afforded to adults. The State of Arizona, in fact, does not afford the same due process for juvenile prosecutions as it does for adult criminal prosecutions. Indeed, the Arizona Supreme Court has held that "certain constitutional protections afforded adults are not guaranteed to juveniles." *David G. v. Pollard ex rel. County of Pima*, 207 Ariz. 308, ¶24 (2004) (holding that a city court judge, sitting as a juvenile hearing officer, cannot apply the Rules of Criminal Procedure and order a jury trial). In *Pollard*, the Arizona Supreme Court interpreted Ariz. R.P. Juv. Ct. 6 and reasoned that juvenile proceedings are to be conducted informally *"in a manner similar to the trial of a civil action* before the court sitting without a jury." (Emphasis added). In other words, things like the Confrontation Clause, the right to a grand jury indictment, the right to a preliminary hearing are non-existent in Arizona's juvenile justice system. The State Court explained that the task of the juvenile court is "to strike a balance—to respect the 'informality' and 'flexibility' that characterize juvenile

proceedings, and yet to ensure that such proceedings comport with the 'fundamental fairness' demanded by the Due Process Clause." *Pollard ex rel*. 207 Ariz. at ¶ 24 (citations omitted). Juvenile adjudications in the State of Arizona require a "flexibility necessary to promote the policies of the juvenile justice system." *Id.*

Other parts of the Sentencing Guidelines provide support for Guerrero's argument. Section 4A1.3(C), "Upward Departures Based on Tribal Court Convictions," for example, guides a district court on when an upward departure might be warranted for defendants with tribal convictions, which are not assessed criminal history points under the Guidelines. Because tribal convictions and foreign convictions are not assessed criminal history points, in considering an upward departure, a district court may consider whether those prior convictions afforded the defendant "a right to trial by jury and received other due process protections consistent with those provided to criminal defendants under the United States Constitution." USSG § 4A.1.3 (commentary n. 2(C)(i)). Those due process protections are absent in Guerrero's case.

As candor to the Court, there is one case that seems to hold that juvenile adjudications do count toward a defendant's criminal history score. In *United States v. Williams*, the Ninth Circuit held that the defendant's due process rights were not violated because his adult criminal sentence was enhanced due to prior juvenile adjudications in which he did not have a right to a jury trial. *United States v. Williams*, 891 F.2d 212 (9th Cir. 1989). It is underscored, however, that *Williams* is a *pre-Apprendi* case and its holding has been called into doubt by *Apprendi* and *Blakely v. Washington*, 542 U.S. 296 (2004); *see also U.S. v. Blanton*, 367 F.Supp.2d 1288, 1292 (C.D. California 2005) (finding that Defendant's juvenile adjudications may not serve as predicate offenses under 18 U.S.C. § 924(e)(1) because Defendant was not afforded the right to a jury trial in those proceedings).

### B.    Paragraph 62

#### a.    PSR Calculations

The PSR writer assessed Guerrero one point to his criminal history score for "Possession of Drug Paraphernalia." PSR ¶ 62. According to the PSR, Guerrero pleaded guilty to said offense on January 9, 2023, and, pursuant to a plea agreement, agreed that he would be sentenced to 12 months' unsupervised probation. *Id.* The PSR writer assessed him one point under §§ 4A.1(c) & 4A1.2(a)(4). *Id.* Although Guerrero pleaded guilty to the offense, federal agents arrested him for the instant offense before the Yuma County Superior Court could impose sentence in that case.

#### b.    Argument

Section 4A1.2(a)(4) states that "[w]here a defendant has been convicted of an offense, but not yet sentenced such conviction shall be counted as if it constituted a prior sentence under § 4A1.1(c ) if a sentence reuslting from that conviction otherwise would be countable." USSG § 4A1.2(a)(4). Section 4A1.2(b)(1), "Sentence of Imprisonment Defined," states that "[I]f part of a sentence of imprisonment was suspended, 'sentence of imprisonment refers only to the portion that was not suspended." Section 4A1.1(e) defines "criminal justice sentence" to mean a "sentence countable under § 4A1.2 having a custdodial or supervisory component, although active supervision is not required for this subsection to apply. For example, a term of unsupervised probation would be included[.]"

Guerrero's plea to Possession of Drug Paraphernalia is not counted toward his criminal history score, however, because his agreement to be sentenced to unsupervised probation is the equivalent to a suspended sentence under Arizona law. *See State v. Harris*, 122 Ariz. 593, 594 (App. 1979) ("Probation is not a sentence, but rather a feature of the suspension of imposition of the sentence.").[1] When a court suspends a sentence, "it retains

---

[1]"If a person who has been convicted of an offense is eligible for probation, the court may suspend the imposition or execution of sentence and, if so, shall without delay

jurisdiction over that individual's punishment until the probationary term is completed or a prison sentence is subsequently imposed." *State v. Holguin*, 177 Ariz. 589, 591 (App. 1993). "Upon violation of the conditions of probation, the trial court may revoke probation and then impose a sentence on the original conviction as authorized by the applicable statutes." *State v. Everhart*, 169 Ariz. 404, 406 (App.1991). Simply put, under Arizona law, probation is the suspension of sentencing because a trial court can impose sentence of imprisonment for a violation of the probation. As such, Guerrero's sentence of unsupervised probation cannot be assessed any criminal history points because it is considered a suspended sentence under the Guidelines and suspended sentences are not counted toward a person's criminal history score.

### C.    Conclusion

If the Court were to sustain the objections to the PSR, Guerrero would be eligible for the newly created § 4C1.1 to the U.S. Sentencing Guidelines, which provides that any offenders who did not receive any criminal history points (i.e., scored on Criminal History Category I) and whose offense conduct does not contain certain aggravating factors (e.g., crimes of violence or a sex-related offense) are eligible for the new "Zero Criminal History" category, resulting in a decrease of two levels from the defendant's total base offense level.

For the reasons contained in this Memorandum of Points and Authorities, Guerrero asks this Court to sustain his objections to ¶¶ 60-62 of the draft Pre-Sentence Report and recalculate his offense level and his Criminal History Category.

///

///

place the person on intensive probation supervision ... or supervised or unsupervised probation on such terms and conditions as the law requires and the court deems appropriate." Ariz. Rev. Stat. § 13-901(A).

RESPECTFULLY SUBMITTED: December 18, 2023.


_s/Juan L. Rocha_
JUAN L. ROCHA
Attorney for Defendant

I hereby certify that on *December 18*, 2023, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and transmittal to the following ECF registrants:

Ms. Addison Santome
Assistant United States Attorney

Copy Mailed to:

Mr. Jesus Guerrero
Defendant