GARY M. RESTAINO
United States Attorney

ADDISON SANTOME
Arizona State Bar No. 031263
Assistant United States Attorney
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone:  602-514-7500
Email: addison.santome@usdoj.gov
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. 22-CR-00318-003-PHX-DGC |
| Plaintiff, | |
| vs. | **RESPONSE TO DEFENDANT'S PRESENTENCE REPORT OBJECTIONS AND UNITED STATES SENTENCING MEMORANDUM** |
| Jesus Guerrero, | |
| Defendant. | |

The Presentence Report Writer has appropriately applied the 2021 United States Sentencing Guidelines (U.S.S.G.) to JESUS GUERRERO's ("Defendant") case avoiding *Ex Post Facto* challenges. Defendant's objections requested under the 2023 U.S.S.G. should be denied because piecemeal application of the two guideline versions frustrates the legislative objective of uniformity in sentencing. Additionally, Defendant's criminal history is correctly calculated resulting in a Criminal History score of III.

The United States recommends a sentence of fifty-two (52) months in the Bureau of Prisons followed by three (3) years of supervised release, as this sentence avoids sentencing disparities among the defendants while still being sufficient, but not greater than necessary, to comply with the purposes of sentencing.

I.      **FACTS**

On October 25, 2022, Defendant was charged with a single count of

Conspiracy, and twenty-two (22) counts of Material False Statement During the Purchase of a Firearm, Aid and Abet, for his involvement in an eleven defendant firearms trafficking enterprise.

On July 12, 2023, Defendant admitted to the following factual basis in the plea agreement:

On or before April 1, 2022, Defendant JESUS GUERRERO recruited co-defendant Richard Montijo to purchase firearms on behalf of co-defendant Omar Molina-Galeana. Due to juvenile criminal history, Defendant JESUS GUERRERO cannot legally purchase a firearm under Arizona law.

On or about April 1, 2022, Defendant JESUS GUERRERO supervised the purchase of two Century Arms rifles made by co-defendant Richard Montijo. Defendant JESUS GUERRERO accompanied co-defendant Richard Montijo to Jones & Jones, a Federal Firearms Licensee (FFL). Defendant JESUS GUERRERO told co-defendant Richard Montijo which firearms to purchase and provided cash to cover the cost. Co-defendant Richard Montijo entered Jones & Jones alone. Co-defendant Richard Montijo selected two firearms to purchase and completed the Firearms Transaction Record, known as ATF Form 4473. Under the provisions of Chapter 44 of Title 18, United States Code, ATF Form 4473 contains information required to be kept by FFLs.

Question 21(a) on the form states, "Are you the actual transferee/buyer of the firearm(s) listed on the form? Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person". In response to Question 21(a), co-defendant Richard Montijo selected "Yes" he was the actual purchaser/buyer. Defendant JESUS GUERRERO and co-defendant Richard Montjo knew co-defendant Richard Montijo was purchasing the firearm on behalf co-defendant Omar Molina-Galeana. After co-defendant Richard Montijo submitted the form to Jones & Jones, he purchased and left with the firearms. Subsequently, Defendant JESUS GUERRERO picked up co-defendant Richard

Montijo to drive him to Omar Molina-Galeana's residence to deliver the two firearms.

## II.    RESPONSE TO DEFENDANT'S PRESENTENCE REPORT OBJECTIONS

### A.    The PSR Writer Appropriately Applied the 2021 United States Sentencing Guidelines to Defendant's Case.

Generally, the court is required to apply the version of the Sentencing Guidelines in effect on the date of sentencing. *United States v. Mooneyham*, 938 F.2d 139, 140 (9th Cir. 1991); 18 U.S.C. § 3553(a)(4)(A)(ii). However, when the *Ex Post Facto* clause is violated because the new version of the guidelines provides a higher sentencing range than the version in place at the time of the offense, the court should apply the Guidelines in effect at the time of the commission of the crime. *Peugh v. United States*, 569 U.S. 530, 530 (2013). Piecemeal application of two versions of the guidelines is inappropriate and undermines the legislative intent of uniformity in sentencing. *United States v. Warren*, 980 F.2d 1300, 1306 (9th Cir. 1992).

Here, as estimated in Exhibit A, the application of the 2023 U.S.S.G. to Defendant's case would yield a total offense level of 29, while application of the 2021 U.S.S.G. yields a total offense level of 26. Because applying the 2023 U.S.S.G. would violate the *Ex Post Facto* clause, the court should apply the 2021 U.S.S.G. in whole. Therefore, objections filed based on the 2023 U.S.S.G. should be overruled.

### B.    The PSR Writer Correctly Calculated Defendant's Criminal History Score under the 2021 Guidelines

The U.S.S.G. outline how Criminal History points are to be awarded depending on the type of conviction. The U.S.S.G. provides a juvenile sentence imposed for an offense committed prior to defendant's eighteenth birthday is counted only if confinement resulting from such sentence extended into the five-year period preceding the defendant's commencement of the instant offense. U.S.S.G. §4A1.1 comment 2. If the sentence of confinement is at least sixty days, two points should be awarded. U.S.S.G. §4A1.2(d)(2)(A). However, if the sentence is less, then one point should be awarded.

U.S.S.G. §4A1.2(d)(2)(B). Also, a conviction for which the imposition or execution of sentence was totally suspended or stayed shall be counted as a prior sentence under §4A1.1(c). U.S.S.G. §4A1.2(a)(3).  Unlike the cases cited in Defendant's objections, this criminal history calculation, unlike predicate offenses and armed career criminal sentencing enhancements, does not increase the maximum or mandatory sentence under the law. The drafter's intent is clear given the abovementioned criteria that certain juvenile convictions should be awarded points and are treated different then adult convictions.

Here, Defendant has three prior convictions which should be awarded points as follows:

First, Defendant was convicted of Burglary in the 3rd Degree in Yuma, Arizona as a juvenile. He was placed on probation on August 2, 2016. However, due to several probation violations, he was committed to juvenile corrections for a minimum of 9 months on July 14, 2017. On August 28, 2018, he was released to a group home only to be revoked and recommitted to juvenile corrections on January 29, 2020. He was released on March 8, 2020. The Defendant began his involvement in this present offense in November 2021, well within 5 years of serving his term of incarceration. Because this is a juvenile conviction in which he served at least sixty days of confinement, he was appropriately awarded two points for this conviction.

Second, Defendant was convicted of Possession or Use of Drug Paraphernalia in Yuma, Arizona as a juvenile. He was placed on juvenile intensive probation on March 1, 2017. On July 14, 2017, he was committed to juvenile corrections for a minimum of 9 months. On August 28, 2018, he was released to a group home. On January 29, 2020, he was recommitted to juvenile corrections until his sentenced expired on March 8, 2020. Because the revocation conduct in this convictions was also used to revoke his probation in his Burglary conviction, it should not be used to double count or increase this sentence. U.S.S.G.  §4A1.2 comment 11.  Therefore, he was appropriately awarded one point for this conviction.

Lastly, Defendant was convicted of Possession of Drug Paraphernalia in Yuma,

Arizona as an adult. He entered a plea to 12 months unsupervised probation. Defendant argues that because this is a suspended sentence under Arizona law it should not be counted. However, U.S.S.G. §4A1.2(a)(3) requires this sentence be counted. Therefore, he was appropriately awarded one point for this conviction.

The Defendant's criminal history score was appropriately calculated, therefore the Defendant's objections should be overruled.

**III.    UNITED STATES' SENTENCING RECOMMENDATION**

The Sentencing Guidelines are "the starting point and the initial benchmark" for sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007).  After considering the advisory range, the "district court should then consider the § 3553(a) factors to decide if they support the sentence suggested by the parties." *United States v. Carty,* 520 F.3d 984, 991 (9th Cir. 2008)(en banc).  Pursuant to 18 U.S.C. § 3553(a) factors, the Court shall impose a sentence sufficient, but not greater than necessary to comply with the following purposes:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a)(2).

The government, having reviewed the draft PSR (Doc.384) concurs with the calculation of a total offense level of 26, CHC III, for a sentencing range of 78-97 months of imprisonment. The plea agreement stipulates to a cap at the midpoint of the guidelines. When considering the § 3553(a) factors and balancing Defendant's conduct against other similarly situated defendants, the United States submits a sentence of fifty-two (52) months in the Bureau of Prisons and three (3) years' supervised release is sufficient but not greater than necessary to achieve the principles of sentencing.

The nature and circumstances of these offenses—Conspiracy to Purchase and

Traffic 35 Firearms—is serious.  18 U.S.C. § 3553(a)(1).  Defendant, using his close personal relationships with his friends and family members, recruited multiple people to purchase firearms for co-Defendant Omar Molina-Galeana knowing these firearms were destined for Mexico. Under Arizona law, Defendant would have been barred from purchasing these firearms himself due to his prior juvenile felony conviction. Firearms trafficking is an epidemic in the United States and Mexico which fuels violent crime. In this case, many firearms were recovered in Mexico having been used in violent crimes.

The history and characteristics of this Defendant are troubling.  U.S.C. § 3553(a)(1). Despite having only one adult felony conviction which occurred subsequent to Defendant's involvement in this present offense, the Defendant has previously served terms of incarceration for his juvenile convictions.  There is no meaningful break in the Defendant's juvenile conduct and this adult criminal conviction. Additionally, the Defendant admits to involvement in alien smuggling and other illegal acts which he has not been charged. Defendant's criminal engagement appears to be a longstanding constant in his life.

The nature of Defendant's conduct counsels in favor of a sentence that will hopefully serve as an adequate deterrent against further criminal conduct by Defendant.  18 U.S.C. § 3553(a)(2)(B).  In June 2022, the United States Congress passed the Bipartisan Safer Communities act which codified several new offenses, including firearms trafficking and straw purchasing. Defendant's conduct predates the implementation of these new laws, but the public safety concerns around similar conduct fueled this legislation. Long after the Defendant completes his sentence, these firearms will remain a public safety threat. This looming threat warrants a fifty-two-month sentence.

The Defendant presents educational and vocational training needs. 18 U.S.C. § 3553(a)(2)(D).  Defendant has expressed interest in earning his GED, and eventually receiving training in HVAC or appliance repair while in the Bureau of Prison. These achievements would provide the Defendant with sufficient skills to allow him to remove himself from a life a crime.

Due to the similarity of conduct, Defendant should receive a sentence similar to that

of co-defendant Omar Molina-Galeana. 18 U.S.C. § 3553(a)(6).  Defendant worked as a recruiter and manager for co-defendant Molina-Galeana. Co-defendant Molina-Galeana received a 52-month sentence for his involvement in this case as the ringleader. Although Defendant participated as a manager, and not the leader, his higher criminal history score supports a 52- month sentence despite his lesser role. Therefore, to avoid sentencing disparities, the United States recommends a 52-month sentence.

**IV.    Conclusion**

Given the Presentence Report Writer correctly applied the 2021 U.S.S.G., the Court should overrule the objections filed by the Defendant, and sentence the Defendant, consistent with the plea agreement and for all the reasons outlined above, to fifty-two months sentence in the Bureau of Prisons followed by three years of supervised release.

Respectfully submitted this 27th day of December, 2023.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/Addison Santome*
ADDISON SANTOME
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on December 27, 2023, I either provided copies in person in court or electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to various defense counsel to be appointed.

Juan Rocha
*Attorney for Defendant*

*s/Addison Santome*
United States Attorney's Office