**JUAN L. ROCHA**
Rocha Law Office
Arizona Bar No. 025039
P.O. Box 5965
Mesa, Arizona 85211-5965
Tel: (480) 855-1759
Fax: (855) 327-4858
jrocha.law@gmail.com
Attorney for Defendant

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>          Plaintiff,<br><br>    -vs-<br><br>Jesus Guerrero,<br><br>          Defendant. | Case No. 2:22-cr-00318-DGC-003<br><br>DEFENDANT'S SENTENCING MEMORANDUM |

Defendant, Mr. Jesus Guerrero by and through undersigned counsel, provides the following Sentencing Memorandum for the Court to consider at his sentencing hearing. For the reasons contained in this Sentencing Memorandum, Mr. Guerrero asks this Court to vary downward and impose a prison sentence of 24 months. A sentence of 24 months' imprisonment followed by three years of supervised release, is sufficient but not greater than necessary to satisfy the sentencing objectives under 18 U.S.C. § 3553(a).

RESPECTFULLY SUBMITTED: January 9, 2024.

              *s/Juan L. Rocha*
              JUAN L. ROCHA
              Attorney for Defendant

**CHARACTERISTICS OF THE DEFENDANT**

Tooth decay begins, typically, when debris becomes trapped between the teeth and along the ridges and in the grooves of the molars. The food rots. It becomes colonized with bacteria. The bacteria feeds off sugars in the mouth and forms an acid that begins to eat away at the enamel of the teeth. Slowly, the bacteria works its way through to the dentin, the inner structure, and from there the cavity begins to blossom three-dimensionally, spreading inward and sideways. When the decay reaches the pulp tissue, the blood vessels, and the nerves that serve the tooth, the pain starts—an insistent throbbing. The tooth turns brown. It begins to lose its hard structure, to the point where a dentist can reach into a cavity with a hand instrument and scoop out the decay. At the base of the tooth, the bacteria mineralizes into tartar, which begins to irritate the gums. They become puffy and bright red and start to recede, leaving more and more of the tooth's root exposed. When the infection works its way down to the bone, the structure holding the tooth in begins to collapse altogether. People with bad teeth have more struggles with life, they're unmarketable and earn less money, and suffer more, prone to mental health issues and depression. Susan Sered, Uninsured in America, University of California Press (2009).

The story about the tooth is a metaphor for Mr. Guerrero's life. It, too, started with a small debris of food pinned between his teeth, namely, his father abandoning the family, which led to an unstable home leaving Mr. Guerrero to largely raise himself, this then led to his use of illicit substances, to later dropping out of school, to subsequently associating with boys who had nothing but bad intentions, to criminal conduct, and then finally jail. His father's abandonment, which seemed benign at the time, and all the events that followed and the choices he made vis-a-vis these circumstances, eventually led to a rupture of the structure of his life. Indeed, the PSR writer described that Mr. Guerrero "was raised in a low-income household and struggled with lack of guidance." But it was more than being raised in a low-income family. Mr. Guerrero was born out of wedlock. He doesn't know why his father left

the family. He was murdered in 2022 in Mexico. His mother was sexually and socially promiscuous. With strange men coming and going to see his mother, Mr. Guerrero came to believe this was normal behavior. These men had nothing good to teach a young boy. His sisters faired no better. One of his sister's was removed by the State of Arizona and became a ward of the State, while another sister died in 2022; she was only 17 years old. Not wanting her grandchild to become a ward of the State, his maternal grandmother pulled him from his so-called home. She attempted to raise him, but she, too, was limited in her skill and physical strength. She suffered from a host of medical infirmities. Because she was a pill-popper, she was often sedated. With no care-giver in his life, Mr. Guerrero slowly floated in the wrong direction.

As is often the case in these circumstances, Mr. Guerrero gravitated toward negative peer influences during childhood and, as he described to the PSR writer, started "'hustling' at a young age to support himself." He wanted to prove, in other words, that he was tough. His "friends" gave him the sort of respect and significance he never received from his parents or family. Unfortunately for him, his friends directed him to a life of criminality. At 14 years old, when boys are going through puberty, Mr. Guerrero was arrested for burglary. He was incarcerated nine months at a juvenile detention center. Even though juvenile justice is to reform the juvenile, i.e., provide them with an education, learn about agency, and build a skill, in Mr. Guerrero's case these resources were not afforded to him. Instead, he learned how to become a better criminal. The older juveniles in detention introduced this 14-year-old boy to a world beyond his borders, both figuratively and literally. After his release from juvenile prison, Mr. Guerrero returned to high school but never graduated. The only thing that held any real gravitas for him was what he learned in juvenile detention. Mr. Guerrero has one ally who understands his impulsiveness and reckless behavior and knows he is redeemable: the Supreme Court.

3

In *Roper v. Simmons*, 543 U.S. 551 (2005), the Supreme Court held that juveniles could not be sentenced to death. In reaching its decision, the High Court contrasted the culpability of an adult with the culpability of a juvenile. For the latter, the Court found that "[a] lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young. These qualities often result in impetuous and ill-considered actions and decisions." *Id.* at 568. These description perfectly encapsulates Mr. Guerrero. He was an impulsive teenager who clearly never thought through the consequences of his decision. Even though he is older now, he is still redeemable. As the Court explained

> From a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed. Indeed, [t]he relevance of youth as a mitigating factor derives from the fact that the signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside. *Roper*, 543 U.S. at 570.

Put another way, young people are impetuous, irrational, and reckless, but those characteristics are temporal; as such, a young person, like Mr. Guerrero, can be rehabilitated. He has the capacity to reform and rehabilitate himself. In fact, the Court found that young people "have a greater claim than adults to be forgiven *for failing to escape negative influences in their whole environment.*" *Id.* at 570 (emphasis added). While Mr. Guerrero had agency to choose to do what he did in this case, no one can say he had any agency in deciding what family to be born into or how to escape the negative influences of his environment.

The arch of Mr. Guerrero's life bends toward rehabilitation and redemption. Even though he has been held in pretrial detention since his arrest for this offense, he has somehow managed to maintain a legitimate relationship with his significant other. Today, he is the father of a baby boy. He is a young man who in the right circumstances can flourish

4

to becoming a contributing member of our society. Imposing the recommended sentence in this case would not serve the statutory purposes of sentencing, which requires a sentencing court to account for rehabilitation and educational programs, something he has never benefitted from while incarcerated. And while some of those resources may exist in the federal prison system, they are insufficient in helping him turn his life in a more positive direction. (As this Court knows, the Violent Crime Control and Law Enforcement Act of 1994 banned incarcerated people from accessing Pell Grants, reducing the number of programs that offered associate's or bachelor's degrees to inmates, which is almost non-existent today.) Mr. Guerrero would be better served by people and programs outside the prison walls.[1]

Aristotle has a notion he called "telos," which held that natural objects have natural ends or potentials toward which they tend to if not interrupted. The acorn under the right conditions becomes the oak. The child under the right conditions becomes an adult. Mr. Guerrero has never been placed under the right conditions to become an adult. His life has been interrupted by several negative events, people, and influences. Like people with bad teeth, he, too, will have more struggles with life and suffer more if the Court imposes a lengthy prison sentence. This Court has an opportunity to place him under the right conditions and circumstances so he can become a functioning adult. A lengthy prison sentence, however, would stunt his development. A shorter prison sentence followed by a period of supervision would allow Mr. Guerrero to gradually build a stable and productive life for him and his burgeoning family.

---

[1]Mr. Guerrero currently has an arrest warrant issued by the Yuma Superior Court. He was arrested by the U.S. Marshals for this offense before the superior court in Yuma could impose sentence. Once Mr. Guerrero completes his federal sentence, it is very likely that he will be writted to the superior court in Yuma for the court to impose sentence in that case, thus, possibly resulting in a longer prison sentence for him. As such, the Court should take this into account in crafting in appropriate sentence in this case.

For the reasons contained in this Sentencing Memorandum, Mr. Guerrero asks this Court to vary downward and impose a sentence of 24 months' imprisonment, which would be the longest sentence he has served to date. A 24-month period of incarceration satisfies the statutory purposes of sentencing as outlined by Congress in 18 U.S.C. § 3553(a).

RESPECTFULLY SUBMITTED: January 9, 2024.

*s/Juan L. Rocha*
JUAN L. ROCHA
Attorney for Defendant

I hereby certify that on *January 9*, 2024, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and transmittal to the following ECF registrants:

Ms. Addison Santome
Assistant United States Attorney

Copy Mailed to:

Mr. Jesus Guerrero
Defendant